COGSWELL BENTLEY AND GLADYS H. BENTLEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56810. Filed April 22, 1959.

*Francis A. O'Brien, Esq.*, for the petitioners.
*A. Jesse Duke, Jr., Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in the petitioners' income tax for the year 1951 in the amount of $13,791.30. The issue is whether the petitioners understated the long-term capital gain realized from the sale of 400 shares of stock in the amount of $25,125 by overstating the basis of such stock.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are hereby included by this reference.

Cogswell Bentley and Gladys H. Bentley, husband and wife, are residents of Rochester, New York. They filed a joint income tax return for the year 1951 with the then collector of internal revenue for the twenty-eighth district of New York at Buffalo, New York. Cogswell Bentley will hereinafter be called the petitioner.

In February 1930 the petitioner learned that the Rogerson Cold Storage, a New York corporation, was for sale and that the price was $72,000. On February 17, 1930, he made the following offer to George M. Tuttle, E. A. Rogerson, and John B. Frey, who were the sole stockholders of the Rogerson Cold Storage:

Cogswell Bentley hereby offers to purchase the real property and other assets of every sort of the Rogerson Cold Storage, for the sum of Seventy-two thousand Dollars, ($72,000.00) payable as follows:

Fifty thousand Dollars by a mortgage on said property for that amount, to be dated March 1, 1930, payable as to principal in installments of Five thousand Dollars each on March 1st of each year, commencing March 1, 1932, and balance in full on March 1, 1940, with six percent interest payable semi-annually September 1st and March 1st; With the option of paying any greater sum on the principal on any interest day:

Seven thousand Dollars by a three months note for that amount, to be executed by Cogswell Bentley and to be secured by One hundred and fifty shares of stock of Fairport Storage and Ice Corporation, of present book value of Eighty Dollars per share: Such note to carry six percent interest: Said Bentley to have the privilege of renewals for Seven thousand Dollars for a period of twelve months from March 1, 1930, and of renewals for Two thousand Dollars from March 1, 1931 to September 1, 1931:

Fifteen thousand Dollars in cash at the time of your acceptance in writing of this offer.

Said real property and other assets are to be free and clear of all encumbrances; and all obligations of said company in the form of accounts or notes payable or otherwise, taxes—whether local, state or federal—, claims for accrued wages or other operating expenses, are to be paid by you prior to delivery of possession.

Possession of the plant is to be delivered and all shares of said company turned over to me not later than March 1, 1930.

At a stockholders meeting held on February 22, 1930, the stockholders of the Rogerson Cold Storage "decided to accept the offer as made, and the officers of the company were authorized and directed to make, execute and deliver, such papers, agreements, and other documents, which might be necessary in order to carry the sale and transfer of the property into effect, it being understood, that said transfer was to be made as of the date of March 1st, 1930." At the same meeting the "[t]reasurer was directed to ascertain all of the outstanding indebtedness of the corporation, and to make such arrangements as might be necessary to pay the same, prior to the said 1st day of March, 1930, on which date the transfer of all the capital stock of the corporation was to be made to such persons as might be designated by said purchaser."

Subsequent to the offer made by him on February 17, 1930, the petitioner examined the abstract of title of property of the Rogerson Cold Storage and discovered the existence of a mortgage in the amount of $41,560, dated August 7, 1929, by the Rogerson Cold Storage to John B. Frey and George M. Tuttle. Prior to August 7, 1929, the Rogerson Cold Storage was indebted to two banks for a total of $47,560, and on August 7, 1929, John B. Frey and George M. Tuttle agreed to pay the bulk of this indebtedness to the banks and to take back a first mortgage in the amount of $41,560 covering the real property of the Rogerson Cold Storage as security for the amount so paid by them, with the said "mortgage to be conditioned for the payment of the said sum of Forty-one Thousand Five Hundred and Sixty ($41,560.00) Dollars in one year from the 7th day of August, 1929." The rate of interest was 6 per cent, payable semiannually.

On February 24, 1930, the petitioner wrote a letter to George M. Tuttle as follows:

After conference Saturday Feb. 22nd with Messrs. Rogerson and Graham, I understood that Mr. Frey, Mr. Rogerson, and yourself suggested and approved the acceptance by you of the mortgage made to you and Mr. Frey by Rogerson Cold Storage in August 1929 for $41,560.00, and a further mortgage to be made by Rogerson Cold Storage to Mr. Rogerson for $8440.00 as in lieu of the $50,000. mortgage called for by my offer to purchase which you three gentlemen signed last Saturday. In line with that suggestion, I have prepared and hand you herewith for your examination and approval an extension agreement as respects the $41,560.00 mortgage and a new mortgage for $8440.00.

\*  \*  \*  \*  \*  \*  \*

As the new mortgage for $8440.00 is to be executed by the new officers on the consent of the new stockholders, I would suggest that the necessary stock transfers be made as soon as possible and the necessary resignations of present officers and directors be signed. In transferring the stock, please have certificate for one share made out in the name of DeLancey Bentley, one share in the name of Raymond Bentley, and the balance (which I understand is 398 shares) in the name of Cogswell Bentley.

On March 1, 1930, an extension agreement covering the existing mortgage of $41,560 was executed between the Rogerson Cold Storage, the mortgagor, and George M. Tuttle and John B. Frey, the mortgagees. Petitioner signed the extension agreement as president of the Rogerson Cold Storage. All the terms of the mortgage remained the same, except that the time of payment was changed, with payments of $4,156 to be made on March 1, 1932, and on March 1 of the succeeding years. The entire principal was to be paid by March 1, 1940. The rate of interest was 6 per cent, payable semiannually. Also on March 1, 1930, the Rogerson Cold Storage executed a mortgage to Edward A. Rogerson in the amount of $8,440, with payments of $844 to be made on March 1, 1932, and on March 1 of the succeeding years, with the entire principal to be paid March 1, 1940.

On March 3, 1930, the petitioner executed a document in which it was stated that he "being the owner of more than two-thirds of the capital stock of the Rogerson Cold Storage issued and outstanding, do[es] hereby consent that said corporation execute and deliver to Edward A. Rogerson, * * * its bond and mortgage, to secure $8,440.00, indebtedness due said Edward A. Rogerson." Both mortgages were duly recorded in the office of the Clerk of Genesee County, New York.

On March 1, 1930, all of the outstanding stock (400 shares) of the Rogerson Cold Storage was transferred by John B. Frey, George M. Tuttle, and Edward A. Rogerson to the petitioner. The agreement executed to carry out this transfer provided the condition "that said stock be transferred to him [the petitioner] free and clear of all encumbrances whatever, and that at the time of said transfer the properties and assets of said corporation shall be free and clear of all liens and encumbrances." The agreement provided further, as follows:

It is expressly understood that there are excepted from the provisions of this agreement two mortgages on the property of said corporation, one to John B. Frey and George M. Tuttle, for $41,560.00 dated August 7th, 1929, and one to Edward A. Rogerson for $8,440.00, dated simultaneously herewith, and said property shall be and remain subject to the lien thereof.

Petitioner made a cash payment of $15,000 to the sellers of the stock and he also gave them a 3-month personal note in the amount of $7,000. The note was subsequently paid in full by the petitioner.

On the balance sheet of Rogerson Cold Storage, as of June 30, 1930,

there appeared under liabilities the item "Mortgage" in the amount of $50,000.

On December 1, 1951, the petitioner exchanged his 400 shares of stock in the Rogerson Cold Storage for first mortgage bonds of said Rogerson Cold Storage and for debenture bonds of the Fairport Storage and Ice Corp., a New York corporation. The aggregate fair market value at the time of exchange of these bonds was $78,850. In reporting the long-term capital gain realized from the exchange on the joint return filed by petitioner and his wife for the year 1951, he claimed a cost basis of $72,000 for the 400 shares. The respondent disallowed the cost basis in this amount and, instead, allowed a cost basis of $22,000 for the 400 shares.

OPINION.

Petitioner contends that, for the purpose of computing gain realized, the proper basis of the 400 shares of stock in the Rogerson Cold Storage exchanged by him in 1951 was $72,000. He arrives at this amount by including in the cost basis two mortgages in the total sum of $50,000 given by the corporation, at the time of the original purchase of the stock by petitioner, to the old stockholders. Respondent argues that the proper basis is only $22,000, consisting of a cash payment of $15,000 made by the petitioner to the sellers of the stock in 1930, and a 3-month note in the amount of $7,000 given by him to the sellers.

Section 113(a), I.R.C. 1939, provides the basis of property that is sold "shall be the cost of such property." We are not here concerned with any of the many adjustments which can be made to basis under other subparagraphs of said section. The basis or cost of property under said statute "normally means * * * cost to the taxpayer." *Detroit Edison Co.* v. *Commissioner*, 319 U.S. 98.

The facts in this case clearly establish the purchase of the 400 shares of stock by petitioner for $22,000. That is the sum the shares cost him. The fact that, for that sum, he acquired all of the stock of a corporation (400 shares) that owed $50,000 does not mean his cost basis is increased by that amount.

Petitioner makes some sort of an argument that he was personally and primarily bound, by reason of his first offer of purchase in February 1930, to pay the $50,000 to the old stockholders. While there was, on the part of the old stockholders, a recorded decision to accept this offer as shown by the minutes, there was no actual acceptance or tender and subsequently the stock of the corporation was purchased pursuant to the agreement of March 1, 1930, which plainly states the stock is to be sold to him with the corporation's secured indebtedness to the old stockholders to remain valid obligations of the corporation and liens against its property. Petitioner did not sign or assume the obligations to pay the $50,000 to the old stockholders. The obligations

were carried on the books of the corporation as a liability. Petitioner never owned the property that stood as security for the obligations. Finally the record does not show petitioner ever paid any amounts due on the $50,000 obligations to the old stockholders. The record shows the two mortgage obligations were satisfied and paid March 25, 1943. Petitioner did not testify that he paid the mortgage obligations and he suggests it was up to the respondent to show that he did not. The only inference is that the mortgage obligations were paid by the debtor, the corporation.

We hold, on the basis of this record, that the two mortgages executed by the Rogerson Cold Storage, in the total amount of $50,000, are not a part of the petitioner's cost basis of the 400 shares of stock acquired by him in 1930; that respondent was correct in allowing a cost basis of $22,000 for the 400 shares of stock.

*Decision will be entered for the respondent.*